| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS |
|---|---|

| | | |
|---|---|---|
| LeeRoy Amador, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION H-04-3441 |
| | § | |
| Thomas A. Davis, Jr., Director | § | |
| Texas Department of Public Safety, | § | |
| | § | |
| Defendant. | § | |

# Opinion on Summary Judgment

1.  *Introduction.*

A man says that he was forced to quit his job because of discrimination and retaliation. The employer says that he was asked to resign because he was insubordinate and did not follow department policy. The employer has moved for summary judgment and will prevail.

2.  *Background.*

LeeRoy Amador is a 49 year old Hispanic man. From January 1979 to May 2004, Amador worked for the Texas Department of Public Safety. Amador was a state trooper. In 1997, he was promoted to sergeant in the department's narcotics division.

In June 2002, Amador applied for a promotion to lieutenant. Amador took the written examination, and he was evaluated by the oral review board. The top ten scorers were recommended for promotion. Because Amador's score ranked fourteenth, he was not promoted. Amador says that his score was "lowered" because of his race.

On August 13, 2002, Amador saw a local Alvin female police officer grab her crotch and thrust it towards him in the Texas City office. In response, Amador told another officer that he planned to complain. Amador says that his captain – Gene Tandy – threatened him by saying "be careful, because we all [have] skeletons in our closets."

On August 19, 2002, Amador saw the same female officer laying across the desk of a co-worker. Amador says that she and another officer were pretending to have sex. Amador filed no report about either incident.

Amador says that he was improperly denied another promotion to lieutenant in November 2002. He, however, supported his assertion with uncorrected and irrelevant data. Amador furnished the top combined scores from an evaluation in 2001. The top thirty-six scores were listed on the sheet. Amador's score was not among them.

In December 2002, Amador placed an informant in an apartment to monitor drug deals at the complex. Although the department requires officers to document this practice, Amador did not. Amador said that his lieutenant – Rene Ramirez – orally approved the placement. Ramirez, however, does not remember the conversation. Tandy learned about the informant when the complex manager called asking for her removal. Amador said Ramirez threatened to monitor Amador closely.

In April of 2003, Amador again applied for a promotion to lieutenant. Amador's superiors placed information about the informant incident in their report to the review board. Amador thinks the information was irrelevant and improperly lowered his rating. The top eight scorers were selected for promotion. Amador ranked eighteenth. Amador says that he was not selected because of his race.

In May, Amador asked Ramirez for sick leave. Ramirez required that Amador submit a doctor's note. Amador says this was harassment because other officers were not forced to do the same.

In May 2003, Amador was out on approved vacation. Ramirez called Amador and told him to come in to work to correct mistakes in a report. Amador says this is harassment, too.

Amador owned a building that he leased in Hitchcock, Texas. Without Amador's knowledge, the lessee operated illegal gambling machines in the building. The police raided the building and seized the machines. Although department protocol required that Amador report such an incident, he did not. Tandy did not know about the raid until the Hitchcock police department called him. Ramirez made Amador write a memoranda about the incident.

On October 8, 2003, Amador filed a complaint with the Texas Workforce Commission. Amador complained of racial discrimination and retaliation. Amador says his superiors learned about the complaint on October 17, 2003.

On November 9, 2003, Amador had a fight with his wife, who is also a trooper. She called her partner to help her remove Amador from their home. The next day Ramirez found out about the incident, and he reprimanded Amador for not reporting it immediately.

On November 14, 2003, the department began investigating Amador. The investigation uncovered several negative incidents, including another domestic violence report in 2002. In May 2004, Amador was suspended.

In June 2004, the department reviewed Amador's work records and the investigation. It decided to terminate Amador. The department told Amador that he could resign or be terminated. On June 30, 2004, Amador resigned.

3.  *Exhaustion.*

Amador must exhaust his administrative remedies before this court may exercise jurisdiction over his employment discrimination claim. The department argues that Amador did not exhaust his administrative remedies for two reasons: (a) Amador did not submit a claim for retaliatory discharge; and (b) Amador did not swear to the truth of his complaint.

Amador admits that he did not include a claim for retaliatory discharge in his complaint to the Texas commission. Amador says the complaint was one cause of his forced resignation. Retaliation for filing a complaint is something that could reasonably be expected to grow out of the initial complaint, but because it is a separate transaction it must be presented to the agency with new facts. Amador may would be required to file a retaliatory discharge claim with the commission. *Gupta v. East Texas State University*, 652 F.2d 411 (5th Cir. 1981), citing *Pettway v. American Cast Iron Pipe Co.*, 411 F.2d 988 (5th Cir. 1969). For the purposes of this opinion, it is assumed that the commission did not have to review Amador's retaliation claim to exhaust his administrative remedies.

Amador did file a complaint with the Texas commission. There are factual disputes as to whether the procedure was followed. The department says that he did not

swear to the truth of his complaint. For the purposes of this opinion, it is assumed that Amador followed the required procedure in his complaint form.

4. *Scope.*

Amador says that he filed a claim with the commission on October 8, 2003. Federal law requires Amador to file a claim within three hundred days of the unlawful employment action. He is precluded from arguing about events that occurred before December 13, 2003.

5. *Race and Color.*

Amador says the department unlawfully discriminated against him because of his race and color. Amador, however, makes no distinction between the two. For the purposes of summary judgment, they will be combined and dealt with as race discrimination, as understood in his Hispanic background.

Amador must show by a preponderance of the evidence that he (a) was in a racial minority; (b) he applied and was qualified for a job that was seeking applicants; (c) he was rejected; and (d) after his rejection, the department filled the position with someone outside of his racial minority. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

The federal statute of limitations bars consideration of any employment act that occurred more than three hundred days before the complaint is filed. Only the April 2003 rejection for promotion can be considered.

Amador says that he was qualified for the April 2003 promotion and was rejected because of his race. Amador did not present any evidence linking the rejection to his race.

Even if Amador did meet the standard, the department can offer a legitimate nondiscriminatory reason for its decision. The department said that he was not qualified because his test score was too low. The top eight scorers were selected. Several of the eight were Hispanic. There is nothing to suggest race was a factor.

Amador also says that he was subjected to a hostile work environment due to his race. Amador's twenty-seven year career was marked with advancement and generally

effective work. The last five years of Amador's record shows marginal performance which made him unattractive in a leadership role. The large number of constantly shifting complaints turned to insubordination when Amador became unsatisfied with his advancement in the department. Other than the department's disciplinary actions, Amador only disapproved of two crude acts by his co-workers. The work environment was not so severe that no reasonable person in Amador's position could be expected to endure it. Amador chose to endure the work environment until he was forced to resign.

6.   *Retaliation.*

Amador says that there are two potential retaliation claims. One claim is based on retaliation due to race and the second is based on Amador's complaint to the commission.

Amador's complaint says that the department retaliated against him because of his race when he was not promoted. Because of the statute of limitations, the only promotion that can be considered is April of 2003. This fails for the same reason that racial discrimination fails – Amador's scores were too low.

Amador also argues that he was forced to resign after the department retaliated against him for filing a discrimination claim. For these purposes, it is assumed that Amador was fired. Amador is still required to show why his complaint with the commission resulted in the firing. Amador's only evidence of causation is that he filed a claim and was later fired. It is necessary that the events occurred in that order, but merely occurring does not prove causation. The department, however, provided evidence of legitimate reasons for Amador's removal from his job: (a) repeated failure of keeping superiors informed; (b) two incidents involving potential domestic abuse; and (c) general insubordination.

Amador's retaliation claim fails.

7.   *Conclusion.*

Amador failed to link the department's employment actions to race or his complaint to the commission. In contrast, the department presented substantial evidence supporting its reasons for taking the actions. All of the department's reasons were non-

discriminatory and legitimate. The department will prevail and Amador will take nothing.

Signed March 31, 2006, at Houston, Texas.

_____
Lynn N. Hughes   USDJ
United States District Judge

- 6 -